63  535
3ap458

# THE PEOPLE, *ex rel.* Arnold Gregory, and Arnold Gregory *vs.* OZRO LOVE.

Since the decision of *The People* v. *Saxton*, (22 *Wend.* 309,) and *The People* v. *Cook*, (8 *N. Y.* 68,) it has been considered settled that on the trial of a *quo warranto*, where the question as to who was elected to a particular office, and what was the intention of certain ballots, is investigated before a jury, the court and jury are not confined to the narrow limits which control the boards of canvassers, who have no power to take evidence *aliunde* the ballot itself, for the purpose of elucidating any apparent ambiguity on its face, or any apparent incongruity between it and the surrounding circumstances. *Per* TALCOTT, J.

The placing, upon a ballot, of a "paster" containing one name, over another name, indicates an intention to substitute one name for another. If it be placed over another name which is under the title of an office, it indicates an intention to substitute for that office the name upon the paster. If it be done in such a manner as to afford any ground for doubt whether the voter intended to designate two persons for the same office, that doubt may be safely left to be solved by a jury, in view of all the facts, the appearance of the ballot, and the surrounding circumstances.

At an election for town officers, printed ballots were used, headed, "For supervisor, Ozro Love." Next below, was, "For town clerk, John A. Raymond." Upon the canvass of the votes, twenty-six ballots were found, having upon each of them a "paster," or slip of paper, with the name of the relator printed thereon, pasted under the heading "For supervisor," so as to cover the name of Ozro Love. And some of them wholly covered, and others partly covered, the words "For town clerk," next below the name of Ozro Love; so that, in cases where the whole of the words "For town clerk" were covered by the "paster," the ballot, with such paster, purported to be, "For supervisor, Ozro Love, John A. Raymond." The board of canvassers refused to allow either the relator or Love any of the ballots on which the relator's name was pasted, and where the paster covered the whole or any part of the words, "For town clerk," on the ground that they designated the names of two persons, viz., the relator and John A. Raymond, for the office of supervisor; and their decision was sustained by the judge at the circuit.

*Held*, 1. That the judge, at the circuit, erred in holding, as matter of law, that the rejected ballots could not be allowed to the relator.

2. That the facts should have been submitted to the jury, for them to determine whether the ballots in question designated two names for the same office, or were only intended to substitute the name of the relator for that of the defendant, for the office of supervisor.

EXCEPTIONS taken on a trial at the Orleans circuit and ordered to be heard at the general term, in the first instance.

*John H. White*, for the relator.

I. The court erred in deciding that the six votes with pasters could not be counted for Gregory, and in refusing to submit to the jury the question as to the whole twenty-six; in deciding that Love was elected; and in dismissing the complaint. 1. "The rules for conducting elections, contained in the statutes, are intended to afford all citizens an opportunity to exercise their right to vote; to prevent illegal votes, and to ascertain, with certainty, the true number of votes cast, and for whom. These are directory and not jurisdictional in their character." (*The People* v. *Cook*, 8 *N. Y.* 68, 86.) 2. "The Supreme Court has power to go behind the certificate of the canvassers and the ballot box, to ascertain the intention of the voters in depositing their ballots, and to correct errors made by them." (*Id.* 67–83.) Since the decision of the Cook case, it has been considered as the settled law that the only question is, what was the intention of the voter in casting the ballot—to be ascertained like any other fact—not by his swearing to his intention, but by his acts and the surrounding circumstances. The mere statement of the proposition (to any person accustomed to the practice of political parties in their nominations, and to the manner of conducting our elections,) that two tickets were in nomination at a given election, and printed and circulated; that there were the names of the two nominees for the same office of supervisor printed on the tickets, and immediately below them, on the respective tickets, the names of two other nominees for the other office, of town clerk; that the several persons in nomination resorted to the usual mode of pasters to secure votes for themselves from the other party, and that twenty-six of the pasters of

The People *v.* Love.

one of the candidates were pasted over the name of the opposing candidate, and in so doing, the paster covered, in some cases, a portion of the title to the office below, and in others the whole of that title; shows conclusively the intention of the voter to vote for the man whose name he pasted, as against the name pasted over, and rebuts any idea that he designed to vote for two names for the same office, or to vote against the nominee for town clerk, though the title to that office was covered by the paster. No one can doubt but in all of those cases the voter intended to vote for Arnold Gregory for supervisor, and for John A. Raymond for town clerk, and the question is, whether this court will allow this plainly expressed intention to be defeated by any technical rule of law, or whether, in accordance with the dictates of right, truth and justice, they will make haste to discover some rule or principle of law to right this acknowledged wrong. We submit, in all confidence, that the principles established in, or rather re-affirmed by the Cook case, enable the court to do this without violating any rule of law, technical or otherwise.

Statutory rules for the conducting of an election, as we have seen, are merely directory; and they are directory and directing only to the boards of canvassers, and not in any regard controlling, in the courts. The court goes behind the certificate, and behind the ballot box, to the voter, to ascertain by his acts, viewed in the light of the surrounding circumstances, what his intention was, for whom he intended to vote, and for what officers, and whether he intended to vote for but one man for the same office, or for two. Hence the rule, binding upon boards of canvassers, that when a ballot has upon it the names of two or more persons for the same office, when but one is to be elected, it is of no consequence in the courts, except as it declares a rule of evidence, that where two names appear upon the ballot in connection with the same office, it may be *prima facie* evidence that the voter in-

tended to vote for two; but where, from other circumstances and acts, it is evident that this appearance is deceptive, and that the real intention was not thus to vote, the court will give effect to the real intention, as against the apparent intention. The one is the rule for canvassers, mere ministerial officers, the other for the courts, whose only aim is to ascertain the real facts of the case by the application of the ordinary rules of evidence.

The judge at the circuit decided the case upon the authority of *The People* v. *Seaman*, (5 *Denio*, 409.) In that case "it appeared that a ballot was found in the box which had on it the names of both the relator and the defendant, which was rejected by the canvassers. The defendant offered to show by a witness that an elector showed the ballot to him (the witness) with the name of the relator upon it, and requested the witness to alter it by substituting the name of the defendant; and that the witness did thereupon insert the defendant's name, but neglected to erase that of the relator. The judge excluded the evidence, and the defendant excepted." The court, says the judge, "properly rejected the proof which was offered in regard to the ballot which had upon it the names both of the relator and the defendant. The intention of the elector cannot be thus inquired into when it is opposed or hostile to the paper ballot which he had deposited in the box. We might, with the same propriety, permit it to be proved that he intended to vote for one man when his ballot was cast for another; a species of proof not to be tolerated." This is all there is in the case on that point, and the judge was undoubtedly right in rejecting the evidence; for although it was not in conflict with the ballot, it added nothing to the force of the evidence presented by the ballot itself. It is a familiar rule that where a printed blank—lease, contract, or what not—is filled up, and some sentence is inserted with a pen in conflict with some of the printed matter, the writing is to prevail over the print,

The People v. Love.

as the highest evidence of the intention of the persons making the contract; and this principle has been applied to the case of a ballot, by the Court of Appeals, and it would seem that had the case in Denio been before that court they would have directed a verdict for the defendant in accordance with this familiar rule. In the case of *The People* v. *Saxton*, (22 *N. Y.* 309,) the names of the three candidates were Silas Saxton, Solomon S. Hommell and Cornelius Burhans. Two had Hommell's name printed on them, and the name Silas written at the beginning, and Saxton at the end of the printed name of Hommell, thus: Silas Solomon S. Hommell Saxton. On one of them the printed name was not erased at all; on the other the written name Silas laps over and upon the printed name Solomon. Upon another, the name Silas Saxton was written upon and over the printed letters of Hommell's name, which were not otherwise obliterated or defaced. Another had the name of Burhans printed upon the ticket, with the name Silas written before and Saxton after it, thus: Silas Cornelius Burhans Saxton. The inspectors rejected these ballots, on the ground that they contained two names for the office of county clerk, and it depended on these whether the defendant was elected or not. The judge charged that this decision was not conclusive, and it was for them to say whether the ballots designated two names for the office of county clerk, and the plaintiff excepted. The jury found for the defendant. The two opinions affirming the judgment are not reported, because the court unanimously put its judgment on this ground: "The intention of the voter is to be inferred, not from evidence given by him of the mental purpose with which he deposited his ballot, or his notions of the legal effect of what it contained or omitted, but by a reasonable construction of his acts. His writing a name upon a ballot in connection with the title of an office, is such a designation of the name for that office, as to satisfy

The People *v.* Love.

the statute, although he omits to strike out a name printed upon it in connection with the same office. The writing is to prevail, as the highest evidence of his intention. The judge ought to have charged the jury, as a matter of law, that they were bound to find the facts accordingly, from the face of the ballot itself. The jury having found in accordance with what would have been a proper direction the verdict must stand."

In the case at bar, the judge thought this case not in conflict with the *The People* v. *Seaman*, but we are unable to view it in that light. He seemed to think that the court, in 22 *N. Y.*, might have put some stress upon the idea that the middle name for a person was surplusage, and amounted to nothing, the name Silas being written before the name Saxton, after the other names with which it was in connection; but that idea is not advanced in the case at all, but on the contrary, the fact of two distinct names is recognized. He also seemed to assume, in order to make it parallel with this, that in the Seaman case the name of Seaman was written above that of Eastman, which was printed; but this supposition is not warranted by the facts in the case.

It would be a strange decision which should uphold the verdict of a jury that Silas Solomon S. Hommell Saxton was the same name as Silas Cornelius Burhans Saxton, and that they both were nothing more than Silas Saxton, pure and simple.

II. The exceptions in this case having been ordered to be heard, in the first instance, at the general term, the general term is required to give judgment. (*Code*, § 265. *Devoe* v. *Hackley*, 3 *Rob.* 679.) The defendant cannot avail himself of any of the evidence with reference to illegal votes, as the judge, in effect, ruled out all that evidence, and refused to submit the matter to the jury; and the defendant took no exceptions thereto, nor requested him to submit any question upon that evidence. Therefore, if

The People *v.* Love.

the court hold that the judge was wrong in his rulings, and that as a matter of law (there being no conflict in the evidence,) the relator should have been allowed the twenty-six votes, and the four double votes, or enough of either or both to overcome the defendant's apparent majority of twenty-one votes, they should direct judgment for the plaintiffs.

*Bullard & Glidden,* for the defendant.

I. One of the ballots did not contain the name of the office to which the person was intended to be chosen, as required by the statute, and should have been rejected for that reason. (1 *R. S.* 344, § 4.)

II. The judge was right in rejecting the ballots with two names on them for the office of Supervisor. (*The People* v. *Loomis,* 8 *Wend.* 396. *The People* v. *Seaman,* 5 *Denio,* 409. 1 *R. S.* 133, § 12.) The case of the *People* v. *Saxton,* (22 *N. Y.* 309,) does not apply, because in that case there was written evidence of the intention of the voter. The court says: "His writing a name upon a ballot, in connection with the title of an office, is such a designation of the name for that office as to satisfy the statute, although he omits to strike out a name printed upon it in connection with the same office. The writing is to prevail, as the highest evidence of his intention." It was the case of the construction of an instrument containing conflicting written and printed matter, and the well settled rule was applied, that the writing must be adopted and the printing rejected. The ballot itself furnished conclusive evidence of what the voter meant. There was in reality but one name on it. In the present case, the ballots, as prepared and deposited by the voters, furnish no evidence whatever as to which person they designed to vote for. They intended to do just what they have done—to have the ballot read just as it does read. There is no evidence of fraud, mistake or inadvertence. Covering the words,

"For Town Clerk," so they cannot be read, has the same legal effect as deliberately erasing them with a pen, or procuring ballots to be printed with the words omitted. *Parsons*, in his work on *Contracts*, (*vol.* 2, *p.* 6,) uses the following language: "The rule of law is not that the court will always construe a contract to mean that which the parties to it meant; but rather that the court will give to the contract the construction which will bring it as near to the actual meaning of the parties as the words they saw fit to employ, when properly construed, and the rules of law will permit. Words must not be forced away from their proper signification to one entirely different, although it might be obvious that the words, used through ignorance or inadvertence, expressed a very different meaning from that intended. For if the words employed were those intended to be used, but their actual meaning was totally different from that which the parties supposed and intended them to bear, still their actual meaning would, generally, if not always, be held to be their legal meaning." A voter's design to vote for a particular man is of no consequence unless he designates the person, in some unmistakeable manner, so that others can tell, not what he meant to do, but what he *did* do. Neither court nor canvassers should guess 'at a man's intention, and then correct and amend his ballot, so as to carry out such supposed intention.

III. Rejecting the four double ballots and the one without a caption, and allowing all the rest for Mr. Gregory, and he has four majority. This is more than overcome by the illegal votes proved to have been given for him. (*The People* v. *Pease*, 27 *N. Y.* 45.)

*By the Court*, TALCOTT, J. This is an action substituted by the Code in the place of the writ of *quo warranto*, and was instituted to try the respective titles of the relator and

the defendant to the office of supervisor of the county of Orleans, for the town of Barre.

The defendant occupies the office, to which the relator claims that he, the relator, was duly elected, at the annual town meeting of the town in April last. Issue was joined between the parties, and the action went to trial at the Orleans circuit, where the court ordered the complaint to be dismissed.

The facts upon which the question arises are substantially as follows : At the town election referred to, there were two tickets for town officers put in nomination by the voters of the town ; one denominated the Republican, the other, the People's ticket. The relator was the candidate for supervisor on the People's ticket ; the defendant was the candidate for the same office on the Republican ticket. All the ballots that were voted were printed. The Republican ticket commenced, and was in form, as follows :

"For Supervisor,
Ozro Love.
For Town Clerk,
John A. Raymond.
For Justice of the Peace, (Full Term,)
LeRoy R. Sanford.
For Justice of the Peace, (Vacancy,)
Henry M. Gibson."

And so on, proceeding and stating in the same manner, and in addition to the portion quoted above, the title of various other offices, viz., collector, commissioner of highways, overseer of the poor, assessor, constables, game constable, and inspectors of election for the three districts of the town. Under each of the titles was printed a single name, except in the cases of the constables and the inspectors of election, and under each of those the number of names requisite to fill the offices specified were printed.

The "People's ticket" was in the same form, with a designation, however, of different names for the respective offices.

Upon the canvass of the votes, twenty-six ballots were found consisting of the regular "Republican ticket" with what is known as a "paster." These "pasters" are narrow slips of paper with a name printed thereon, the back of the slip of paper being covered with mucilage for the purpose of conveniently applying them to a regular ballot, over a name upon it, and thus substituting the name on the printed slip for some name on the regular ballot over which it is pasted. Each of the twenty-six votes above mentioned contained one of these slips having the name of Arnold Gregory, alone, printed upon it, and pasted over the name of Ozro Love. In other respects they were the regular ballot known as the "Republican ticket." The "pasters" were pasted under the head of the words "For Supervisor" at the head of the ticket, so as to cover the name of Ozro Love, and some of them wholly covered, and others partly covered the words "For Town Clerk," which was printed on the ballot below the name of Ozro Love, and above the name of John A. Raymond; so that in the cases where the whole of the words "For Town Clerk" were covered by the "paster," the vote with the "paster" purported to be as follows:

> "For Supervisor,
> Ozro Love.
>
> John A. Raymond."

By holding the ballot up to the light the words "For Town Clerk" could be read through the paster, in the space between the names of Ozro Love and John A. Raymond. On one of the ballots which contained these "pasters," the paster nearly covered up the words "For Supervisor."

The board of town canvassers declined to allow either

Love or Gregory any of the twenty-six ballots on which the name of "Arnold Gregory" was so pasted, and which covered the whole or any part of the words "For Town Clerk," upon the ground, as is conceded, that they designated the names of two persons, namely, Arnold Gregory and John A. Raymond for the office of Supervisor. This decision was sustained by the court, on the trial, as to all ballots where the paster covered the whole of the words "For Town Clerk." If these votes counted for the relator, he was elected to the office in question.

We think the judge at the circuit committed an error in holding as a matter of law, that the ballots rejected by him for the cause stated, could not be allowed to the relator. Since the decision of *The People* v. *Saxton*, (22 *Wend.* 309,) and *The People* v. *Cook*, (8 *N.. Y.* 67,) it has been considered settled, that on the trial of a *quo warranto*, where the question as to who was elected to a particular office, and what was the intention of certain ballots, is investigated before a jury, the court and jury are not confined within the narrow limits which control the boards of canvassers, who have no power to take evidence *aliunde* the ballot itself, for the purpose of elucidating any apparent ambiguity on its face, or any apparent incongruity between it and the surrounding circumstances. It was expressly held, in *The People* v. *Saxton*, (*supra,*) that the decision of the inspectors of election rejecting a ballot as designating the names of two persons for a single office is not conclusive, but upon *quo warranto* the question as to the voter's intention is open to inquiry by the jury. And in that case it was held, where a name was written upon a printed ballot in connection with the title of an office, that the written name was to be counted for the party whose name was written, although a printed name for the same office, on the same ballot, was not erased. And this was held as a matter of law, upon the ground that where an instrument contains both writing

and printing, and the two appear to be inconsistent, the written words afford the best evidence of the intention, and accordingly that in that case the writing of the name afforded conclusive evidence of the intention of the voter to cast the ballot for the name that was written, and that the omission to erase the printed name was accidental. The same principle, we think, applies to this case. The acts of the voter are to receive a reasonable construction, in view of the surrounding circumstances.

The placing of a paster containing one name, over another name, indicates an intention to substitute one name for another. If it be placed over another name which is under the title of an office, it indicates an intention to substitute for that office the name upon the "paster." If it be done in such a manner as to afford any ground for doubt, whether the voter intended to designate two persons for the same office, we think that doubt may be safely left to be solved by a jury, in view of all the facts, the appearance of the ballot and the surrounding circumstances.

In this case, we are of the opinion that the facts should have been submitted to the jury, for them to determine whether the pasted ballots in question designated two names for the same office, or were only intended to substitute the name of the relator for that of the defendant for the office of supervisor.

A new trial must be ordered, with costs to abide the event.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, September 10, 1872. *Johnson, Barker* and *Talcott,* Justices.]

63 547
59h 302
63 547
85h 101,

## WILDER and others *vs.* BOYNTON.

A counter-claim, as now used and understood, includes recoupment and set-off.

In an action for money paid, and for manufacturing ninety-six fire extinguishers for the defendant, at his request, amounting to $1200, a balance of $1076 being claimed as due, the answer, after setting up a general denial, alleged that in consideration of an agreement by the defendant that he would allow the plaintiffs the privilege of making and vending 100 fire extinguishers, of which the defendant was the patentee, the plaintiffs undertook and agreed to manufacture and sell the same, within a reasonable time, and from the proceeds to allow and pay the defendant one-third of the net proceeds of such sales; and that they wholly failed to keep their agreement; whereby the defendant sustained $2500 damages. *Held* that the answer contained all the facts essential to a well stated counter-claim, and necessary to sustain it as such.

Where facts were stated, in an answer, as an avowed "second defence," and at the close of the statement of the defence, the answer contained these further words: "Which sum the defendant will recoup against any demand of the plaintiffs in this action;" *it was held* that there was no validity in the objection that the defendant could not avail himself of the fact, thus stated, except for the purpose of extinguishing the plaintiffs' demand. That under the provisions of the Code, the facts being stated which would be necessary to enable the defendant to give evidence of his defence, it would be the right, as well as the duty, of the court to give such judgment as he should establish, by proof, he was entitled to.

The right of a plaintiff to *discontinue* after an answer containing a counter-claim, and a partial trial, is a qualified one. The court has a right to control its own orders, and may exercise its discretion in respect to the terms upon which parties shall be permitted to discontinue actions.

The plaintiffs (who were non-residents) after voluntarily coming into court and submitting themselves to its jurisdiction, entered upon a trial; and when the defendant produced evidence which not only established that they had no cause of action, or at most, one upon which they were entitled to recover of the defendant a less sum than he was likely to recover of them, they asked for an interview, to negotiate a settlement, and for that purpose the referee suspended the trial. Failing in the negotiations for a settlement, they left the place where the trial was being had, and escaped from the State before the defendant was able to serve them with a summons to commence a second action. *Held* that the plaintiffs having, after occupying the time of the court, deliberately sought to avoid its jurisdiction, they could not, by an *ex parte* order, entered without the leave of the court, discontinue the action; and the same was set aside, on motion.

MOTION by the defendant to set aside an order entered by the plaintiffs, *ex parte*, discontinuing the action, after a partial trial before a referee, and after a portion of the defendant's evidence had been given, before the referee.

The plaintiffs are non-residents, and the affidavits read in support of the motion establish that the plaintiffs, after discovering that they might not recover, suddenly left the State, and evaded a service upon them by the defendant of process for a second suit.

The reference was had upon the stipulation of the respective parties, in open court, and an order in pursuance thereof duly entered.

*Wm. J. Wallace,* for the motion.

*C. A. Hammond,* opposed.

HARDIN, J.   The complaint in this action alleges that the "defendant is indebted to them in the sum of $1076 for money paid to and for said defendant, at his request, about October, 1871, and for manufacturing ninety-six fire extinguishers for the defendant, at his request, at $12.50 each, $1200, which several sums the defendant agreed to pay for as aforesaid." And it also contains a prayer for $1076, balance after crediting the defendant with a payment of $179.   The answer contains a general denial, and then sets up that the defendant, in June, 1869, entered into an agreement with the plaintiffs whereby, in consideration of an agreement of the defendant that the defendant would allow the plaintiffs the privilege of making and vending 100 fire extinguishers, of which the defendant was the patentee, the plaintiffs undertook and agreed to manufacture and sell the same within a reasonable time, and from the proceeds would allow and pay the defendant one-third of the gross proceeds of such sales, and that the plaintiffs wholly failed to keep their agreement; whereby the defendant sustained $2500 damages.

Wilder *v.* Boynton.

The answer contains all the facts essential to a well stated counter-claim.

The facts are stated as an avowed "second defence." The answer, at the close of the statement of the defence, contains the further words, to wit, "which sum the defendant will recoup against any demand of the plaintiffs in this action." And it is now insisted that the defendant cannot avail himself of the facts thus stated, except for the purpose of extinguishing the plaintiffs' demand.

But, under the provisions of the Code, the facts being stated, which would be necessary to enable the defendant to give evidence of his defence, it would be the right as well as the duty of the court to give such judgment as the party should establish, by proof, he was entitled to. (*Code,* §§ 149, 150, 274.)

. The answer " contains a statement of new matter constituting a counter-claim, in ordinary and concise language." It contains all that is necessary to sustain it as a statement of a counter-claim. (*Mattoon* v. *Baker,* 24 *How.* 329.) A " counter-claim" as now used and understood, includes recoupment and set-off. (*Clinton* v. *Eddy,* 1 *Lans.* 61. 3 *Hill,* 171.)

The right of a plaintiff to discontinue after an answer containing a counter-claim, and a partial trial, is a qualified one. The court has a right to control its own orders, and may exercise its discretion in respect to the terms upon which parties shall be permitted to discontinue actions.

The Code has, to some extent, changed the former practice.

This question has been passed upon in numerous cases, since the adoption of the Code. The most recent one reported is that of *Young* v. *Bush,* (36 *How. Pr.* 240.) It was held, in that case, at general term, that the right of a plaintiff to discontinue is not absolute, and that the right to discontinue may be disallowed, in the discretion

Wilder *v.* Boynton.

of the court. The opinion of Justice SMITH, in that case, reviews the authorities, and states quite satisfactorily the rule which should prevail, in respect to discontinuances by the plaintiff. It remains only to apply that rule to this case.

[HERKIMER SPECIAL TERM, September 3, 1872. *Hardin*, Justice. Affirmed, at a GENERAL TERM in the FOURTH DEPARTMENT, held January 7, 1873. *Mullin, Talcott* and *E. Darwin Smith*, Justices.]