J. S. DAVIS v. THE STATE OF TEXAS EX REL. J. A. WREN.

No. 7081.

1. **Information — Certainty.** — In the information it was alleged that certain named persons voted at a certain precinct, and that they were illegal voters, specifying the disqualifications, and that at another precinct a mistake was made in computing the votes, whereby complainant lost votes—each matter being sufficient to overcome the majority of the respondent. *Held*, that a demurrer and exceptions by respondent were properly overruled.

2. **Immaterial Ruling of the Court.**—Touching the overruling of the exceptions to so much of the information as charged the illegality of the vote in the city of San Marcos, the court having decided upon the hearing in favor of the legality of the vote at that place, his action upon the exceptions is no ground of complaint.

3. **Quo Warranto—Pleading—Amendment.**—We are inclined to the opinion that an amendment to the information should not be permitted which sets up grounds for the relief sought essentially different from those alleged in the original, but we see no reason to doubt that under our liberal system of amendment one should be allowed which contains allegations merely in enlargement of or germane to the grounds originally alleged.

4. **Practice—Consent.**—In a suit attacking the right of respondent to an office, the court, on motion of relator, appointed two persons to open the ballot boxes, and to make a recount of all the votes, and to ascertain how the votes of those attacked as illegal had been cast, and to report. The respondent at the time resisted the motion, but withdrew his opposition. No bill of exceptions showed that objection was made to the action of the court. *Held*, that an order of the court of this character must be excepted to when made, and a bill of exceptions must show it.

5. **Same.**—Failing to object to an order of the court appointing such commission to that duty, objections can not be renewed to their report when made in accordance with the order of appointment.

6. **Report of Commission Recounting Votes.**—To the report of the commission appointed to make a recount of the votes, etc., objections for want of pleadings sufficient to admit the testimony were properly overruled where by amendment the information charged that the votes at none of the ballot boxes were correctly counted, and alleging the number of votes actually received by each candidate at each precinct.

7. **Same.**—It was no sufficient reason for excluding the report of the recount of the votes made from the opened ballot boxes that there was a possibility that the boxes had been tampered with since their return to the county clerk, when there was also testimony that the ballot boxes had not been tampered with.

8. **Declarations of Voters Touching their Qualifications.**—Declarations of voters made on the day of the election touching their places of residence, etc., testified to over objection are no ground of complaint on appeal where the trial was before the

judge alone, and where legal testimony was produced to the facts of the places of residence of the voters in question.

9. **Same—Made After the Election.**—The declarations of voters made after an election at which they voted are incompetent to show that they are not qualified voters. Such testimony is against public policy.

10. **Testimony Explaining an Obscure Ballot.**—The law seems to be that a ballot must be interpreted by the ordinary rules which apply to written instruments. If upon the face of the ballot the intention of the voter is clear, extrinsic evidence should not be admitted.

11. **Same.**—A ticket had the printed names of both candidates upon it; across one a pencil mark was clear; across the other a faint pencil mark was apparent. A witness was tendered to prove that the latter was accidental, he knowing the fact from having prepared the ballot for the voter. *Held,* error to exclude the testimony.

12. **Erasure—Interpretation of Ballot.**—The names of both candidates were printed upon the ticket; across the ticket and above the upper name a pencil mark was drawn, erasing or crossing the first initial of the name and touching the next. *Held,* in the absence of explanation the pencil mark was properly held as erasing the first name.

13. **Temporary Absence.**—Evidence that a voter, whose residence was where he voted, had been engaged book-keeping in another county, is insufficient evidence disqualifying him from voting, there being no evidence of purpose of changing his domicile.

14. **Election Precincts—City Wards.**—The town of San Marcos is incorporated and contains four wards. The county commissioners of Hays County only established two election precincts in the town, and they without reference to the wards, and each included parts of the surrounding country. *Held,* notwithstanding the statute (Sayles' Stats., arts. 1663a, 1664), "in each incorporated city, town, or village each ward shall constitute an election precinct," such failure of the county commissioners to recognize each ward as a precinct did not invalidate an election held in the precincts as established, and that the votes of such precincts in a county election were properly counted.

15. **Failure to File Conclusions of Fact and of Law.**—At 9 p. m. of the last day of the term, and at the close of a protracted trial, the district judge was asked to file conclusions, etc. *Held,* his refusal, for want of time, was proper.

APPEAL from Hays. Tried below before Hon. H. Teichmueller.

This is a quo warranto case on the relation of Wren to try the right to the office of sheriff of Hays County for the term of two years from the general election in November, 1888.

Wren was the sheriff incumbent, and a candidate for re-election, J. S. Davis being his opponent.

There was a relation by Wren, and thereon was founded an information in the nature of quo warranto, the court having granted leave to file it.

Defendant answered setting up various matters of defense: demurrer, general and special; general denial; and then affirmative matter challenging votes cast for relator, and alleging that he had been denied legal votes cast for him, defendant.

Trial before the court, under whose rulings the vote was found to be equal—a tie; whereupon court gave judgment of ouster and for cost against defendant. The facts are given in opinion.

*Brown & Beasley, Kone & Vaughn,* and *Walton, Hill & Walton,* for appellant.—1. The information does not conform to the relation, and objections thereto should have been sustained and the case dismissed. High on Ex. Leg. Rem., secs. 606, 710, 711, and authorities cited; Ex Parte Bellows, 1 Mo., 115, 2 ed., 1880; McCrary on Elec., 2 ed., sec. 266, and cases cited; Id., 3 ed., sec. 394; Gano v. State, 10 Ohio St., 237; Eng. and Am. Enc. of Law, p. 399, notes 1, 7; Id., 407, note 4.

2. The count was unauthorized by the pleadings, there being no allegation in relator's pleadings to warrant the going into any ballot box, save in precinct 4, and only in that to ascertain how the voters named voted and how the eight unnamed voters voted. McCrary on Elec., 3 ed., secs. 400, 447.

3. A voter by declaration or confession can not qualify or disqualify himself as a voter. McCrary on Elec., 3 ed., 71; Eng. and Am. Enc. of Law, p. 429, and note 4.

4. The ballot boxes after their return to the county clerk were accessible to persons unauthorized to have access to them.

5. It is incumbent on him who seeks to overcome the declared result of an election, made according to law, and appeals to the ballots as primary and best evidence, to show affirmatively that the ballots have been safely kept, and have not been subject to access by unauthorized persons.

6. The mark on the ballot of H. M. Nearsom was not an erasure of the name of J. S. Davis. The erasure of Jas. A. Wren was full. The mark above the name of Davis created an ambiguity and was subject to explanation. Roberts v. Short, 1 Texas, 380, 381; Callison v. Gray, 25 Texas, 86, 87; McCrary on Elec., secs. 395–97, and authorities cited.

7. If the declarations of voters before election are admissible as to their qualifications, as was held by this court in this case, then their declarations after they have voted are equally admissible. McCrary on Elec., 3 ed., 71; Eng. and Am. Enc. of Law, p. 429a, note 4.

8. The ballot boxes were insecurely fastened, in most cases with a single small tack into a common cigar box. The boxes were insecurely kept, not under lock and key, and were subject to the access of unauthorized persons. Unauthorized persons did have access to them. The ballots could have been tampered with. The recount tends to show that the ballots were tampered with. All which facts were shown by the evidence, and when so shown the recount should have been withdrawn from the jury and the official count adhered to. McCrary on Elec., 3 ed., 436–443; Newton v. Bevill, 26 Minn., 529; Cogland v. Beard, 65 Cal., 58; Cool. Const. Lim., p. 625; Eng. and Am. Enc. of Law, p. 425, and note 3.

*Jas. M. Bethany,* district attorney, for the State.

*W. O. Hutcheson, O. T. Brown,* and *Denman & Franklin,* for relator Wren.—1. The object of a sworn relation is simply to call the attention of the proper officer to the intrusion into office. When with the court's consent the information is filed, and all parties are before the court, the cause is then tried as any other civil suit, and pleadings may be amended as in other civil actions. High on Ex. Legal Rem., sec. 737, and cases cited; McCrary on Elec., 3 ed., sec. 406; Brightly's Elec. Cases, 337.

2. The pleadings of plaintiff did contain averments authorizing the recount of the Buda box, and it is nowhere shown by the record that the change in the state of the vote made by the recount did not originate in said box alone.

3. It is apparent from the record that the recount was made without objection by respondent, and in truth by agreement of parties, and respondent can not resist the result of such recount unless he can show that there was some error in same, or that the ballots counted were not the ballots cast.

4. The ballots furnish the best evidence of the state of the vote. Where said ballots are recounted under the eye of the court, by officers appointed by the court, such recount should prevail over that made by the officers of election, unless it reasonably appear to the court that such ballots have been tampered with since they were deposited by the voters. The lower court, with the witnesses, the ballots, and the boxes all before it, is the best judge of the question of fact raised by the recount, and its judgment that said recount speaks the true state of the vote should not, under the decisions of this court as to the weight to be given to the verdict of a jury or the judgment of a court on disputed facts, be disturbed.

5. The facts in this case show affirmatively that the ballots counted by the committee appointed by the court are the same ballots cast by the voters at the election, and all the ballots cast; and there is nothing in the evidence to create in the mind of the court a reasonable belief that any of said ballots or the boxes in which they were contained have ever been tampered with in any way since said election. Sayles' Stats., art. 1702; People v. Holden, 28 Cal., 124; S. C., Brightly's Elec. Cases, p. 480; Hudson v. Solomon, 19 Kans., 177; McCrary on Elec., sec. 438.

6. The right of voters to vote having been attacked on the ground that they lacked the qualification of residence, any declaration made concerning their true residence prior to the casting of their votes is legitimate evidence. People v. Pease, 27 N. Y., 45; Brightley's Elec. Cases, p. 395, and cases cited, and note, p. 413.

On cross-assignment. The Commissioners Court had no power to designate election precincts in the city. The law made each ward an election precinct. The Commissioners Court, in disregarding election precincts in said city, acted without jurisdiction of the subject matter. Its action was void. No rights can grow up under a void act. The act

being void, the election in said precincts was not held at the place desig-
nated by law and is void.    Sayles' Stats., arts. 1664, 1663*a*; Williams v.
Potter, 1 W. Rep., 617; Brightly's Elec. Cases, pp. 450, 251; McCrary
on Elec., 3 ed., secs. 141, 118, 193, 194.

*Brown & Beasley, Kane & Vaughn,* and *Walton, Hill & Walton,* for
appellant, in reply to appellee's brief on his cross-assignment.—The elec-
tion in San Marcos was a *de facto* election, and had been holden at the
same place for eight years or more.    These were the places the people
had for that length of time uniformly voted at in all general elections,
observing the precinct lines as laid out by the Commissioners Court.
Courts will not set aside an election unless it is clearly illegal, but will give
effect to it if possible.    The State v. Board of Freeh., 35 N. J. L., 269;
Territory v. Mohave, 12 Pac. Rep., 730; Fowler v. The State, 3 S. W. Rep.,
255; Tarbox v. Surghnor, 36 Kan., 225.

GAINES, ASSOCIATE JUSTICE.—This was an information in the nature
of a quo warranto filed upon the relation of J. A. Wren against J. S. Davis,
to oust the latter from the office of sheriff of Hays County.    At the gen-
eral election held on the —— day of November, 1888, the relator and de-
fendant were candidates for that office.    The ground of the action was
that although the Commissioners Court had declared the result in favor
of Davis, Wren had actually received a majority of the legal votes.    The
case having been tried without a jury, the court found that the relator
and respondent had received an equal number of votes, and entered judg-
ment declaring there was no election, and ousting the respondent from
the office.

The original information following the sworn relation alleged that cer-
tain persons, who were named, voted at certain specified boxes for the
respondent; that their votes were counted for him, and that the votes
were illegal.    It was also alleged that eight legal votes for relator had
been cast in a certain precinct, known as the Buda box, which were not
counted for him by the managers of election.    It was also averred that
by the official count the respondent had a majority of only five votes.    The
information contains other allegations which need not be set forth in this
connection.    The original information was filed January 28, 1889, and
an amended information was filed March 7.    On the latter day, and, as
may be presumed, before the filing of the amendment, the respondent
answered, excepting generally and specially to the information " filed on
the 28th day of January, 1889."

The grounds of the special exception were (1) that the allegations were
" vague, uncertain, and indefinite, giving to respondent no information
of fact or facts against which he can make defense with certainty or
knowledge, there being no box No. 2 in voting precinct No. 1 of said

county;" (2) to so much of the information as sought a recovery of respondent for the fees of the office; and (3) that the facts alleged that San Marcos was an incorporated city, divided into wards, and that the commissioners had laid off the election precincts without reference to said wards, presented no grounds for setting aside the election as to any of the precincts.

On the 8th of March other exceptions were filed (1) "to all that part of plaintiff's petition which alleges that a true count of the votes cast will when footed up at the several precincts amount to the alleged quantities for relator and respondent, because the allegations are too general;" and (2) that the allegations were too general to warrant a recount of the votes.

The general and special exceptions of respondent to the information were overruled.

The first assignment is that "the court erred in not sustaining the general demurrer to amended original petition." If the allegations were true, it was clear that the relator was duly elected sheriff, and that respondent was not elected and had taken possession of the office. The information was therefore not subject to general demurrer.

It is also complained that there was error in not sustaining the special exceptions. Waiving for the present the ruling as to the allegations which were intended to show the illegality of the election at the San Marcos boxes, we think the exceptions were properly overruled. The averments were as specific as they ought under the circumstances to have been required. As to the alleged illegal votes, the names of the voters were given, and the grounds of the alleged disqualification of each voter and the precinct at which he voted were stated. It is also alleged that there were mistakes in the count of the votes actually deposited, and the number of votes actually received by each of the parties at each of the boxes was distinctly averred. Greater particularity should not have been required. It was practicable for relator to know and prove, if it were a fact, that the officers had made a mistake in summing up the votes, but it was impossible for him to ascertain the name of each voter whose vote had not been counted. The substance of the allegation as to this matter was not that any particular vote or class of votes had been excluded, but simply that errors had been committed in the summing up of the votes.

In reference to that part of the information which attempted to show that the election at the San Marcos boxes was illegal, it is sufficient to say that it appears from the record that although the exceptions were overruled, the court upon the final hearing held that the votes there cast should be counted. This is not distinctly shown, but we think it is a conclusion to be deduced from the fact that if these boxes had been rejected the result from the pleadings and evidence would have been to give relator a majority of the votes. We infer too that the court finally

determined in favor of the legality of the election at these boxes, because the point is not urged by appellant under the assignment now under consideration. Such being the case, the failure to sustain the exception to this part of the information did not harm appellant.

It is also claimed that the exceptions should have been sustained, because the allegations in the amended petition do not conform to the relation. This was not made a ground of special exception, and the assignment does not raise the question. It is not fundamental error as is contended. In view of a new trial, and that exception may hereafter be presented based upon that ground, we deem it best to pass upon it.

There seems to be some conflict of authority in other jurisdictions upon the question whether the remedy by an information in the nature of a quo warranto is to be treated as a civil or criminal action (High on Ex. Rem., secs. 700, 711), but we think that under our statute it is to be tried as a civil suit. The act authorizing this proceeding provides that a citation shall issue "in like form as in civil suits" (sec. 3), and that the respondent "shall be entitled to all the rights in the trial and investigation of the matters alleged against him as in cases of trial of civil causes in this State." Excluding certain special provisions intended to secure a speedy disposition of the case in the trial court and upon appeal, there is nothing in the act to indicate that the rules of practice prescribed in the Revised Statutes should not apply, as far as is consistent with the nature of the proceeding. We incline to the opinion that an amendment to the information should not be permitted which sets up grounds for the relief sought essentially different from those alleged in the original information; but we see no reason to doubt that under our liberal system of amendment one should be allowed which contains allegations merely in enlargement of or germane to the grounds originally alleged. The rule in other States appears to be to allow the information in a quo warranto proceeding to be amended.

Before the trial the court appointed two persons to open the ballot boxes from all the precincts, to recount the votes cast for sheriff, and to make a report of the number of votes for each of the parties at each precinct, and at the same time to ascertain and report for whom each of the persons whose votes were alleged to be illegal, either by relator or respondent, had voted.

In relation to this matter the appellant has assigned three errors. First, it is claimed that the court erred in making the appointment and directing a recount, and in not striking out the report on motion. The bill of exceptions, as it is called, in regard to the order shows the following facts: Before the case was called for trial, and before the amended information was filed, counsel for relator moved the court to appoint persons to recount the ballots in the box known as the Buda box, which was granted; counsel for respondent then moved that they be also ordered to

recount the votes in the Kyle box. Counsel for relator objected, on the ground that there were no averments in the answer to warrant the recount of that box. The latter motion was nevertheless granted. Counsel for relator then moved that the order be extended to all the boxes, to which counsel for respondent first objected and then withdrew their objection. They did not except at the time the order was made. Having withdrawn their objection, they in effect waived their exception. The respondent can not now complain of the ruling. An order of the court of this character must be excepted to when made, and the object of a bill of exceptions is to show the fact, if the exception be in fact taken. The bill shows that no exception was taken to this ruling. It is shown, however, that after the report was made and filed respondent moved to strike it from the files, and that an exception was taken to the refusal of the court to grant the motion. This seems to us an immaterial matter, because when the report was offered in evidence it was objected to on the same grounds which were urged in the motion to strike it out. The assignment under consideration seems to complain of the ruling of the court in appointing the committee to recount, as well as of the refusal to strike the report from the files. We have therefore discussed both questions. It may be doubted if it be sufficient to raise the latter.

Upon the trial the report under oath of the persons appointed to recount the votes was offered in evidence by relator, and respondent objected upon the grounds: (1) That there was no pleading to warrant the recount. (2) In effect, that it appeared that the ballot boxes had been accessible to the relator and his friends, and it did not appear that they had not been tampered with. The evidence was admitted, and the respondent excepted. After all the testimony was adduced, which included the testimony of the county clerk and others as to the manner in which the ballot boxes had been kept, the respondent moved the court to exclude the report, and the motion being refused, he again excepted. These rulings are made the grounds of two separate assignments of error, and may be considered together. The objections urged to the report were not well taken. The amended information was sufficient to authorize a recount of the ballots. The original information only alleges error in the count of the Buda box; but the amendment averred that none of the boxes were correctly counted, and alleged specifically the number of votes received by each of the parties at each of the boxes. The recount did not show quite as many votes for relator at some of the boxes as was alleged; but at none of them did it show more. The allegations were therefore broad enough to admit the evidence.

In regard to the second ground of objection this may be said, the testimony failed to show that the ballot boxes had been disturbed. There was evidence that the lid of one of the boxes had been split, but there was other testimony which authorized the court to conclude that this was

done when it was opened by the persons who recounted the votes.    The testimony tended to show a possible opportunity for tampering with the boxes; but we do not think this sufficient to warrant a refusal to recount the ballots.    The ruling must stand or fall upon the objections to the evidence urged against its admission, and we think the objections shown by the bill of exceptions were not well taken.    It was not objected that the ballots should have been counted by the court, or that the report was in the nature of hearsay evidence, and therefore illegal.

If there was error in permitting the witness Frank Holt to testify that the voter James Deloach, on being asked on the day of the election for whom he intended to vote, replied, "I can't vote, because I live in Comal County," it was harmless.    The statement of facts contains the admission that "it was proved" that at the time of the election the voter did reside in Comal County.

The same may be said of the ruling in admitting the declarations of the voters Ed. Christian and Robert Hills.    Christian's declarations were that he was living at Burnet, keeping books.    It was abundantly proved that he was living in Burnet at the time, and relator, who was his father-in-law, and testified as to his residence, did not dispute the fact.    Hills himself testified that he was born in England, and the declarations proved were to the same effect.

The declaration of Rodriguez was that he had come from San Antonio about the 1st of May, 1888.    This did not show that he was not qualified to vote in Hays County in the November following, and we can not see that the evidence objected to influenced the finding of the court upon the question of the illegality of the vote.    It is not reversible error to admit improper testimony in a trial before the judge without a jury, unless it should appear that he has considered it and given it weight.    The fact that Rodriguez came from San Antonio about the 1st of May, 1888, was established by other proof.    The issue was, whether or not he came with the intention of changing his residence.

The declarations of these voters, which were admitted in evidence, were all made before or on the day of the election.

The declarations of the voters Albert S. Payne and Lewis Jackson, made after the election, were properly excluded.    Upon this question we have no doubt.    The declarations of a voter after he has voted and after the election has closed in regard to his qualification are not in derogation of any existing right, and consequently can not be treated as a declaration against interest.    Besides, we think the admission of such testimony would contravene a sound public policy.    It would open a door to fraud to permit a voter, who may have changed his mind as to his choice of candidates, and who may have become dissatisfied as to the declared result, to affect the determination of a contest by his declarations.    We

understand the great weight of authority to be in accordance with this ruling.

During the trial a question arose as to the ballot of one Newsom. The original ballot, which is in print and shows the names of both candidates, has been sent up as a part of the record, and shows a distinct pencil erasure of the name of Wren and a very faint pencil mark across the name of Davis. It is impossible to determine from the face of the ballot whether it was the intention to erase the name of Davis or not. The respondent offered to prove by a witness, who identified the ballot, that he made it out at the request of the voter, and that the apparent pencil line across the name of Davis was not intentionally made and that it was not intended as an erasure. The testimony was excluded on the ground that the ballot must speak for itself, and that it could not be explained by evidence *aliunde.* We think this was error. The law seems to be that a ballot must be interpreted by the ordinary rules which apply to written instruments. If upon the face of the ballot the intention of the voter is clear, *extrinsic* evidence should not be admitted; least of all his own evidence as to what his intention was. But if from the face of the ballot the intention be doubtful, then evidence of the circumstances under which it was made out, if calculated to throw light upon the intention, should be admitted. Mr. Cooley says: "We think evidence of such facts as may be called the circumstances surrounding the election—such as who were the candidates; * * * if a ballot was printed imperfectly, how it came to be so printed, and the like—is admissible for the purpose of showing that an imperfect ballot was meant for a particular candidate, unless the name is so different that to thus apply it would be to contradict the ballot itself, or unless the ballot is so defective that it fails to show any intention whatever, in which cases it is not admissible. And we also think that in any case to allow a voter to testify, by way of explanation of a ballot otherwise fatally defective, that he voted the particular ballot and intended it for a particular candidate is exceedingly dangerous, invites corruption and fraud, and ought not to be suffered." Cool. on Const. Lim., 769; see also McCrary on Elec., secs. 407, 411.

The name of Wren having been clearly erased, and the pencil mark across the name of Davis being so faint that it appeared that it may have been the result of accident, we think the testimony of the witness who had made out the ticket, to the effect that it was unintentional, should have been admitted. Whether the ballot was counted for Davis or not, the record does not show. Upon its face the court could have refused to count it, and probably should have so refused. If the trial judge had deemed the evidence admissible and had admitted it, he would have been authorized to count the vote for Davis. One more vote for respondent would have changed the result of the suit, and the error was therefore

material. "In cases where there is doubt as to the intention of the voter because of some apparent ambiguity on the face of the ballot, it is error to reject proper evidence offered to explain the ambiguity." McCrary on Elec., sec. 410, citing People v. Love, 63 Barb., 535.

It is shown by the bill of exceptions that the court, over the objections of respondent, counted the vote of one George Rector for relator. The ground of the objection was that both names appeared upon the ballot, and that neither appeared to have been erased. The original ballot is in the record, and upon it, just above the name of Davis, which is above that of Wren, there is found a broad pencil line, obliterating a part of the first initial of the former's name, and barely touching the second. In discussing the two original ballots sent up with the record, we have spoken of erasures. We mean constructive erasures—that is to say, such lines drawn across the names as clearly show an intention to erase them. In both ballots the lines are made with a pencil, and are so faint that the printing beneath is perfectly legible. None of the names are actually erased. ·The line, however, is usually drawn through the name from the beginning to the end. In this case there is a broad line drawn just above the name of ·Davis, and very close to it, which it is to be presumed was drawn for some purpose. It does touch two letters of the name, and erases in part the first—that is to say, the distinctive legal initial. "It is not necessary to obliterate the name entirely." McCrary on Elec., sec. 411.

We think, in the absence of proof explaining the ambiguity of the ballot, the court did not err in treating it as if Davis' name was erased, and in counting it for relator.

Appellant's twenty-first assignment is, "that the court erred in sustaining the challenge as to the voter Ed. Christian, because the evidence was full to the effect that he had resided in the county of Hays for five or six years prior to the election, and had at no time changed his residence prior to the election."

This assignment is not well taken, because the record does not show whether the court rejected the vote or counted it for respondent. There are no conclusions of fact filed by the court, nor is there any bill of exception to a ruling rejecting the ballot of this voter. The judgment declares the vote a tie, but does not even show how many votes, in the opinion of the court, each candidate received. There is nothing in the record to show whether the vote in question was counted or not, except the assignment. The evidence adduced warranted the court, in our opinion, in counting it, if it did not make it imperative to do so. If the testimony of the respondent is to be believed, it could hardly be said that Hays had ceased to be the county of Christian's residence at the time he voted. Another witness swore substantially to the same facts testified to by relator, and they showed that he had not intended to change his residence. The evidence clearly proved that before the election he had lived in another

county, keeping books, but failed to show, we think, that he had lived there with any fixed purpose of changing his domicile. In view of another trial we have made these suggestions, though we can not say there was error, because we do not know how the court ruled.

There are numerous other assignments of like character to that we have just considered. Being based upon alleged rulings of the court, and there being nothing in the record showing how the court ruled, we can not say there was error. In most instances there was a mere conflict of evidence, which authorized the court to rule either way.

Appellee has filed cross-assignments of error, which we will now proceed to consider. The first is in substance that the court erred in overruling an exception to so much of respondent's answer as set up facts intended to show that the election held at the San Marcos boxes was not illegal. The information attacked the validity of the election at these boxes on the ground that San Marcos was an incorporated city and was divided into wards, and that the Commissioners Court had established the election precincts without reference thereto. In answer to this, respondent alleged that the Commissioners Court had established the precincts by an order duly entered on the 16th day of February, 1888, a copy of which order was made a part of the answer, and that for a long number of years prior thereto the precincts had been laid out in a similar manner, and elections had been held in the precincts so established without objection. The seventeenth assignment complains that the court erred in holding the election in the two precincts now under consideration to be legal. The evidence showed that San Marcos was incorporated and was divided into four wards, and that but two election precincts had been established in the city by the commissioners, and that these were established without reference to the wards, and that they included parts of the surrounding country. So far as appears the validity of the order establishing the precincts was not questioned until this suit was brought. These two assignments may be considered together.

The Revised Statutes provided that the election precincts as then established should constitute election precincts, but gave the Commissioners Courts power to change them in their respective counties. Art. 1663. An act passed by the same Legislature which adopted the Revised Statutes granted the same power to these courts, but among other things provided that each justice precinct should constitute but one election precinct. 1 Sayles' Ann. Stats., art. 1663a.

Article 1664 of the Revised Statutes reads as follows: "In each incorporated city, town, or village each ward shall constitute an election precinct." The difficulty grows out of the failure of the Commissioners Court of Hays County to observe this last provision. But the question is—the court having established the precincts not in conformity with this provision and the election having been fairly held in the precincts so estab-

lished, without objection from any quarter—should it be declared illegal?
Provisions regulating the time and place for holding elections are usually
considered mandatory.    It is of the essence of a fair election that a time
should be fixed and a place appointed where each qualified voter may cast
his ballot or give his vote.    But as we construe the statute in relation to
this matter, it was the intention of the Legislature to impose the duty upon
the Commissioners Courts of fixing the places in each county where the
votes should be cast.    Article 1666 provides " that there shall be desig-
nated by order of the Commissioners Court one place within each election
precinct at which all elections in said election precinct shall be held."
Article 1665 also provides that " each election precinct shall by order of
the Commissioners Court be numbered, and no two election precincts shall
in the same county be designated by the same number."

In order to comply with these requirements, it is necessary for the
courts to determine as a preliminary inquiry, in the first place, whether
or not there is an incorporated town, village, or city in their county, and
in the second, whether or not it is divided into wards.    This is a neces-
sary incident of the duty imposed and the power conferred upon them.
Having then the jurisdiction to determine the questions, was it intended
that their decision should be subject to attack in a collateral proceeding?
Was it the purpose of article 1665 of the Revised Statutes not only to direct
that the Commissioners Courts should make each ward of an incorporated
town, village, or city a voting precinct, but also to provide that in the
event of their failure to do so the election as to precincts affected by such
failure should be declared a nullity?    The main design of all election
laws is, or should be, to secure a fair expression of the popular will in
the speediest and most convenient manner; and we think a failure to
comply with provisions not essential to attain that object should not
avoid the election, in the absence of language clearly showing that such
was the legislative intent.

But there is no express declaration in the statute that a failure of the
Commissioners Court to make each ward an election precinct shall avoid
the election.    Nor does it contain any words from which it should be
necessarily implied that such was the intention.    If such is the meaning
of the law, it must be arrived at by construction.    It may be conceded
that the one purpose of the provision was to prevent illegal voting.    The
Constitution required that each voter should vote in his precinct.    Hence
the provision that each ward of a town or city should constitute a pre-
cinct made it necessary that each voter should cast his vote in the vicinity
where as a general rule his qualifications to vote were best known.    So
far it tended to secure the purity of the ballot box.    Consideration of
public policy may in part have led to the enactment of the statute.    On
the other hand, it may have been inserted merely for the convenience of
the voters living in incorporated towns and cities.

However that may be, there was a more important matter which ought to have been considered, which it is reasonable to presume was considered by the Legislature in inserting the article, namely, the result of making a compliance with it an essential prerequisite of the validity of the election. That result would be to create confusion, to produce litigation, and to bring about the necessity for new elections in cases where the popular will had been fairly expressed. We think this was not intended. It is better to take the chances of a few fraudulent votes being cast, which may or may not change the result, than that an election should be set aside because of the failure of the Commissioners Court to do their duty in a particular not affecting the general fairness of the ballot.

It may be said that the language of the article is not permissive merely, but imposes upon the court an imperative duty. Let it be conceded. It does not follow that a failure to perform the duty makes its action void. It is none the less the duty of a court having jurisdiction of a suit at law to render a judgment according to the law of the case. But should it render a judgment directly contrary to the law, it can not be controverted that such judgment is conclusive in every collateral inquiry.

It may be said that the use of the word "shall" shows that the provision is mandatory. That it is a command to the Commissioners Court may be granted, but it does not follow that it is mandatory in the sense that it makes a compliance with the provision essential to the legality of the election. The word "shall" has been frequently construed as not mandatory when the provision in which it was found did not confer a private right, and the public interest did not demand such construction. Wheeler v. Chicago, 24 Ill., 105; Railway v. Hecht, 95 U. S., 168; Beasley v. People, 89 Ill., 571; Chicago v. Gage, 95 Ill., 593; Philips v. Fadden, 25 Mass., 201.

We think that when the Commissioners Courts have fixed the precincts, and the election has been held, it ought not to be set aside because they have failed to make each ward of a city an election precinct, unless it be shown that they have acted with a fraudulent purpose.

The relator's exception to so much of the answer in reference to the San Marcos boxes was correctly overruled. The court did not err in counting the votes there cast.

For the reasons already stated, we think the relator's demurrer to so much of the answer as set up facts tending to show the illegality of the election at Kyle should have been sustained. The appellee's third assignment for the same reason is also well taken.

The fourth cross-assignment is predicated upon bill of exceptions No. 2. What purports to be bill of exceptions No. 2 in the transcript is not signed by the judge. It can not be considered.

The appellee's other assignments of error complain of the refusal of the court to count votes for relator, and its rulings in counting votes for

respondent.   There being no bills of exceptions and no conclusions of fact filed showing which votes were received and counted and which were rejected, we can not tell from the record how the court ruled, and can not say whether there was error or not.

If the record had disclosed the court's rulings as to the legality of the particular voters whose votes were contested, we might have been able to render the proper judgment in this court.   Since we have no findings of fact by the court, it is impossible to say what judgment should have been rendered.

The failure to file conclusions of fact and law was the result of circumstances and not the fault of counsel or of the court.   The judgment was rendered on the last day of the term, and the request was not made until 9 o'clock p. m. of that day, which was the last day allowed by law for holding the court.   The trial judge properly declined to file his conclusions of law and fact for want of time.   The failure it seems was unavoidable, but it is to be regretted, since we are compelled to reverse the judgment and remand the cause for error prejudicial to appellant in refusing to admit evidence as to a single vote.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered December 17, 1889.