**GIBSON et al. v. DAVIS et al.   (No. 8113.)**

(Court of Civil Appeals of Texas. Galveston. Nov. 15, 1921. Rehearing Withdrawn Dec. 14, 1921.)

**1. Highways ⊕⇒90—Proposed sale of bonds held in substantial compliance with statute requiring examination and approval by Attorney General.**

Where the necessary election and other proceedings required to validate a road district bond issue were had, a proposed sale of the bonds at par value, with accrued interest, payable in cash, to be consummated only on the approval of the bonds by the Attorney General, was a substantial compliance with Vernon's Sayles' Ann. Civ. St. 1914, art. 619, providing that the bonds and supporting record shall be submitted to and approved by the Attorney General before being offered for sale; such statute, which contains no words of positive prohibition nor anything from which it could be necessarily implied that the mode or time mentioned is exclusive, being directory only.

**2. Highways ⊕⇒90—Sale of road bonds to persons whose bid was contingent on award of contract to construct road held valid.**

That a bid for the purchase of road bonds is contingent on the award to the bidders of the contract to construct the road is no legal obstacle to consummation of the sale of the bonds to them, where they bid a sum above the market value thereof, and their bid for the construction of the road was the lowest and best obtainable, and not above the sums usually prevailing for such work.

**3. Highways ⊕⇒113(3)—Notice of reception of bids for construction of road held sufficient.**

A notice that the county commissioners' court would receive bids for the construction of approximately 50 miles of sand clay road *held* sufficient to enable prospective bidders to submit bids for such construction, where it was shown that such bids were to be made on the basis of removal of dirt, gravel, etc., by the cubic yard, grubbing the roadway for so much per acre, digging ditches, etc., and not for the construction of a completed road; there being no law requiring the adoption of complete plans and specifications before advertising for bids for the construction of roads.

**4. Highways ⊕⇒130½, New, vol. 12A Key-No. Series—Determination that accepted bids for construction were best obtainable not set aside in injunction suit in absence of clear evidence to contrary.**

The determination of the county commissioners' court, after due consideration of all the bids for construction of a road, that certain bids were the best obtainable, will not be set aside in an action to enjoin the execution of the contract made in pursuance thereof, in the absence of clear evidence that such bids were not the best obtainable, and that the court fraudulently awarded the contracts.

**5. Counties ⊕⇒196(6)—Validity of contracts with attorneys not considered where attorneys to whom payable not parties to suit.**

The court, in an action to enjoin the county commissioners' court from paying certain fees for legal services, cannot inquire into the validity of contracts between the commissioners and attorneys where the latter are not parties to the suit.

**6. Counties ⊕⇒117—Statute requiring commissioners to advertise before contracting held inapplicable to contracts to pay attorney's fees.**

Vernon's Ann. Civ. St. Supp. 1918, arts. 2268a, 2268b, requiring advertisement by the county commissioners' court before entering into certain contracts, is inapplicable to contracts for the payment of attorneys' fees.

---

⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Counties ⟨key⟩113(5)—Commissioners not restricted in employment of attorneys by statute as to district attorneys giving requested advice.**

The county commissioners' court is not restricted in the employment of attorneys by Vernon's Sayles' Ann. Civ. St. 1914, art. 356, requiring district and county attorneys to give legal advice to the commissioners' court when requested; such statute merely imposing a duty on such attorneys.

**8. Counties ⟨key⟩122(1)—Contracts for services of attorneys relating to bonds held not invalid.**

Contracts for payment of attorneys' fees by the county commissioners' court, to get up bond records, prepare a petition for a bond election, arrange for printing the bonds, obtain the approval thereof by the Attorney General, and get the opinion of a bond attorney as to validity of the bonds, are not invalid because of Vernon's Sayles' Ann. Civ. St. 1914, arts. 605, 619, 622, and 632, requiring the Attorney General to examine and approve all bonds, records, etc.; such services not being such as are required of the Attorney General.

**9. Highways ⟨key⟩109—Sand clay or any other smooth-surfaced roads held "paved roads" within Constitution and statutes.**

Roads covered with sand clay or any material making a firm, hard, smooth surface over which horses, carriages, automobiles, and other vehicles may pass are "paved roads" within Const. art. 3, § 52, and Vernon's Sayles' Ann. Civ. St. 1914, art. 619, authorizing the construction only of macadamized or paved roads and turnpikes.

**10. Highways ⟨key⟩90 — Commissioners having substantial bids for legally salable road bonds need not submit question of revocation and cancellation to voters on petition.**

Where, at the time of the filing of a petition for submission to the voters of a road district of the question of revocation and cancellation of road bonds, the commissioners' court had before it substantial bids for the bonds which could be and were legally sold, they were not required to order an election under Acts 37th Leg. (1919), c. 38, § 2.

**11. Costs ⟨key⟩32(3)—Refusal of costs to plaintiffs failing in essential contentions held not reversible error because of favorable judgment in one particular.**

In an action to enjoin the sale of road bonds and the payment by the commissioners of certain sums for services, where plaintiffs did not prevail in their main or essential contentions, the court's refusal to allow them to recover costs because they recovered judgment restraining the commissioners from carrying out a contract for the employment of an engineer, was not reversible error where such engineer was not a party to the suit, and their prayer for such injunction was presented for the first time in an amended petition filed on the day of the trial.

Appeal from District Court, Trinity County; Carl T. Harper, Judge.

Action by L. C. Gibson and others against W. M. Davis and others. Judgment for defendants, except in one particular, and plaintiffs appeal. Affirmed.

R. E. Minton, of Groveton, for appellants. W. S. Poston, of Lufkin, Hayne Nelms and C. H. Crow, both of Groveton, J. A. Platt, of Houston, and Dean & Humphrey, of Huntsville, for appellees.

LANE, J. Prior to the 20th day of October, 1919, at an election in all respects legally held in road district No. 4 of Trinity county, Tex., the qualified electors of said district voted for the issuance of serial road bonds in the sum of $200,000, numbered from 1 to 200, inclusive, each of the denomination of $1,000. These bonds were voted under the provisions of article 627, Complete Texas Statutes 1920, published by Vernon Law Book Company, which, among other things, provides that subdivisions of the counties of this state are authorized and empowered to issue bonds for the purpose of constructing and maintaining and operating macadamized, gravel, or paved roads and turnpikes, or in aid thereof.

It is shown that the law firm of Nelms & Platt was employed by the commissioners' court of Trinity county to get up certain bond records, to prepare the petition for the bond election above mentioned, to prepare certain instruments, the nature or character of which are not shown, to arrange for the printing of the proposed bonds, and much other work for road district No. 4. It is also shown that a warrant, dated October 12, 1920, was issued to H. Nelms and J. A. Platt for the sum of $750, to be paid out of the funds belonging to road district No. 4, and that said warrant was delivered to said parties.

It appears from the evidence that the services of these attorneys had extended for a year or more before the issuance of the warrant in question. It is not shown what part of the sum paid was for any particular act of service, or the amount paid for each or any particular service.

On the 13th day of January, 1920, some months after the bond election for road district No. 4, the commissioners' court of Trinity county employed one L. G. Hamilton to obtain the approval of the bonds by the Attorney General, and also to get the legal opinion of some eastern bond attorney as to the validity of the bonds for the purpose of enabling the court to sell the bonds to advantage and without delay; such bond attorney to be one who was generally accepted by investors, bankers, and bond houses as competent in such matters.

By the terms of the contract of employment of Hamilton the commissioners' court was to furnish Hamilton two certified transcripts of all proceedings relating to the issuance of the

bonds, one for the Attorney General of Texas, and the other for the use of himself. In consideration for such services Hamilton was to be paid the sum of $880 within 30 days after the bonds were delivered to the county judge for execution, with the legal opinion of the bond attorney stating that he would approve the bonds, after the same had been approved by the Attorney General and registered by the comptroller.

On October 12, 1920, the First National Bank of Groveton made a bid to purchase bond No. 1 of road district No. 4, upon condition that it would pay par and accrued interest for it as soon as the same was duly registered and properly delivered to it at Groveton, Tex.

The commissioners' court accepted such bid, declaring that it was the highest and best bid offered for said bond, and the county judge was then directed to have such bond duly registered, and, upon payment of the bid in cash, to deliver said bond to the bank.

On the said 12th day of October, 1920, the commissioners' court of Trinity county passed a resolution reciting that said road district No. 4 was indebted to L. G. Hamilton for a legal opinion rendered the court with reference to its bond issue and for other services; that it owed other debts then past due and unpaid, and that the proceeds arising from the sale of bond No. 1 to the First National Bank of Groveton was insufficient to pay off and discharge all of said indebtedness. It was also recited therein that said commissioners' court had received a bid from L. G. Hamilton to purchase road bond No. 2 of road district No. 4 of Trinity county by which said Hamilton had agreed to pay to said court a sum in cash equal to the par value of said bond and the interest accrued thereon to date of said delivery of said bond to him at Groveton, Texas. It was then ordered and declared by said resolution that said bond No. 2 be, and the same was thereby, sold to said Hamilton, and that the same should be delivered to him as soon as the bonds were printed, registered, and approved as required by law, upon his paying the sum bid therefor in cash.

Said commissioners' court also passed the following resolution:

"Employing W. J. Kelley Engineer for Road District No. 4.

"On recommendation of the special road committee of road district No. 4 of Trinity county, Tex., it is ordered by the court that W. J. Kelley be employed as engineer of said road district No. 4, the said W. J. Kelley agreeing to perform all the duties intrusted to him as engineer, such as the making of all necessary maps, profiles, cross sections, plans and estimates and supervision of the road improvements, and to furnish all the necessary instruments, assistants, engineering materials and transportation on the job for said engineering work at a stipulated price of 5 per cent. on the total amount of $175,000, which is to be paid in cash on monthly installments. Said Kelley is to prepare contract to be ratified by the commissioners' court.

"Advertising for Bids for Building Road District No. 4.

"It is ordered by the commissioners' court that bids be received for the building of approximately fifty miles of sand clay road in road district No. 4, Trinity county, Tex., on the 5th day of February, 1921, until 10 o'clock a. m., on said day; said bids to be accompanied by a certified check for one thousand ($1,000.00) dollars made payable to the county judge, Trinity county, Tex. Whereupon the court ordered a recess until Tuesday morning, January 11, 1921, at 10 o'clock a. m." (Date not shown.)

A proper notice of the above resolution and notice that 175 of the bonds of road district No. 4 of the par value of $1,000 each would be offered for sale to the highest and best bidder on the 5th day of February, 1921, at 10 o'clock a. m., was published for three consecutive weeks immediately prior to said date.

On the 5th day of February, 1921, the commissioners' court, in special session convened, did at 10 o'clock a. m. proceed to open the bids received by it for the purchase of 175 of the bonds of road district No. 4, and for the construction of approximately 50 miles of sand clay road in said district. There were three bids received proposing to construct the road and to purchase the bonds, one by Smith Bros., one by Moore & Son, and the other by Jeff Cochran and H. S. Lilley. All bids for the bonds were to pay the par value of the bonds, together with accrued interest, conditioned upon the acceptance of their respective bids to construct said road, and conditioned that said bonds should be approved by the Attorney General. The bid of Cochran & Lilley was further conditioned that they should be permitted to take and pay the bonds periodically as the road work progressed. After having read and considered the several bids and having failed to reach an agreement as to the best bid, the court recessed to Friday, February 11, 1921.

On February 11th the contract of Cochran & Lilley was considered and declared to be the lowest and best bid, and the same was accepted by the court as such.

On the 19th day of February, 1921, the appellants, L. C. Gibson, W. B. Roach, S. W. Mangum, and some 270 others, taxpayers residing in road district No. 4, Trinity county, Tex., filed their original petition in the district court of Trinity county, praying: First, that W. M. Davis, T. F. Reiley, J. Y. Renfro, and T. A. Thompson, county commissioners of Trinity county, and C. M. Garrison, treasurer of said county, be temporarily restrained from delivering the 175 bonds bid for to Cochran & Lilley, and from doing any act in furtherance and in consummation of the

proposed sale of said bonds; second, that Jeff Cochran and H. S. Lilley be temporarily restrained from receiving such bonds and from doing anything in furtherance of said proposed purchase; third, that said defendants W. M. Davis, T. F. Reiley, J. Y. Renfro, and T. A. Thompson be temporarily restrained from delivering bond No. 1 of said series to the First National Bank of Groveton, and from delivering bond No. 2 of said series to L. G. Hamilton, or any one for them, and from paying the said L. G. Hamilton $880, or any other amount, for legal services in connection with the issuance and approval of the aforesaid series of bonds; fourth, that the defendant C. M. Garrison be temporarily restrained from paying the warrant heretofore issued, or any one that may hereafter be issued to the said Hayne Nelms and J. A. Platt for legal services rendered in connection with the issuance and approval of the aforesaid bonds; fifth, that the aforesaid W. M. Davis, T. F. Reiley, J. Y. Renfro, T. A. Thompson, Jeff Cochran, and H. S. Lilley be temporarily restrained from constructing, maintaining, or operating any other character of roads with the proceeds of the sale of the aforesaid bonds, when sold, than macadamized, graveled, or paved roads and turnpikes; sixth, that the aforesaid W. M. Davis, T. F. Reiley, J. Y. Renfro, and T. A. Thompson be temporarily restrained from selling such bonds at a sale other than an unconditional sale by bidding and to the highest and best bidder for not less than par value and for cash; seventh, that upon final hearing such injunction be made perpetual, and for costs and for general relief.

The temporary injunction as prayed for was granted by the court in vacation on the 19th day of February, 1921.

On the 23d day of February, 1921, the commissioners' court again met in special session, and at the session Cochran & Lilley, by their letter of that date, called attention of the court to the suit of appellants, and to the fact that appellants were objecting to the sale of the bonds to them upon their said bid, upon the ground that their offer of purchase was to pay for the bonds in monthly installments in indefinite amounts as the work on the proposed road progressed, and to cure such objection they did on said date renew their bid to construct the proposed road in all particulars as in their original bid of February 5, 1921, and then made a bid to purchase the 175 bonds, after the same had been approved by the proper authorities, and had been duly registered as the law requires, and had been approved by their attorneys.

Under the foregoing stipulation they agreed to take said bonds, and pay therefor the par value thereof and accrued interest in cash.

The court accepted the bid so made by Cochran & Lilley on the 23d day of February, 1921, both for the construction of the proposed road and for the bonds, setting forth in the minutes of said special session that—

"The bid or offer of the said Jeff Cochran and H. S. Lilley for the purchase of said bonds is the highest and best bid for cash which this court has been able to obtain therefor."

On the 9th day of March, 1921, appellants filed their amended petition, upon which they went to trial. No new parties were made.

In this petition it is alleged that the bonds were offered for sale by the commissioners' court before they were printed and before they had been approved and certified by the Attorney General, in violation of law; that said court accepted the bid of Cochran & Lilley without being advertised for sale as required by law; that the sale of said bonds to Cochran & Lilley is void, in that their bid was conditioned upon the acceptance by the court of their contract to construct the proposed road in road district No. 4; that in making the bid for the bonds by Cochran & Lilley and in the acceptance by the court of the bids of Cochran & Lilley to purchase the bonds and build the road, it was contemplated by said Cochran & Lilley and the commissioners' court that the price to be paid for the building of the road was so much above what said work could be done for if paid for in cash as would enable Cochran & Lilley to recoup their loss by reason of the market value of the bonds being less than the par value and accrued interest on same; that no intelligent or concrete statement of the work to be performed in the construction of said road was advertised or furnished to prospective bidders for such construction work, so that said bidders might intelligently bid for the performance of such work, and that, as a result of such failure to advertise or to furnish said bidders with such statement, prevented some persons from making bids to do such work who would otherwise have made bids; that the members of the commissioners' court did not exercise their own judgment in accepting the bids of Cochran & Lilley for the purchase of said bonds and the building of said road, but, on the contrary, they undertook to place the sole responsibility for selling the bonds and letting the contract to build the road upon commissioner W. M. Davis, and a "citizens committee," none of whom were members of the commissioners' court; that the bids of Cochran & Lilley were not made in open court as required by law, but were made in a secret executive session of said court from which the public were excluded; that said commissioners' court has undertaken to pay Hayne Nelms and J. A. Platt, out of the funds to be realized by the sale of the bonds of road district No. 4, for certain alleged services as attorneys in connection with the issuance

and approving of said bonds, and have issued a warrant in the sum of $750 against the funds so to be realized, and has undertaken and agreed to pay L. G. Hamilton the sum of $880 out of the funds to be realized by the sale of the bonds for certain alleged legal services rendered and to be rendered in the issuance and approval of the bonds; that said legal services were not necessary, and the attempt of said court to pay for these services is illegal and void, the law providing that the county attorney, district attorney, and Attorney General of Texas, as part of their official duties, shall perform all legal services that are required in the issuance and approval of road bonds; that said commissioners' court has undertaken to sell, without having advertised for competitive bids, and before the bonds are submitted to the Attorney General of Texas for approval, bond No. 1 of said series of bonds of road district No. 4, to the First National Bank of Groveton, and bond No. 2 of said series to L. G. Hamilton; that it is contemplated by said commissioners' court and the said Cochran & Lilley that the contractors will not build macadamized, graveled, or paved roads and turnpikes, but that said money to be realized by the sale of the bonds will be expended in the building of roads constructed of the native soil and of soil and clay, and of sand and clay.

Plaintiffs say further that there was presented to the said commissioners' court on February 11, 1921, and before any bid or offer to purchase the bonds was accepted, a petition and petitions by more than a two-thirds majority of the qualified taxpaying voters of road district No. 4, with a demand that said court immediately order an election for the purpose of submitting the question of the revocation and cancellation of said bonds to the qualified property tax paying voters of such road district. Plaintiffs say further that the bonds cannot be legally sold in conformity with law, and that the said commissioners well knew they could not be so sold, but the aforesaid members of the commissioners' court refused to grant the petition and refused to order the election.

Plaintiffs say further that, on and about the 11th day of February, 1921, the said commissioners' court undertook to enter into a contract with W. J. Kelley whereby he was employed, and to be paid 5 per cent. of $175,-000, without first advertising for bids for two weeks, and without letting such contract to the lowest and best bidder therefor.

The prayer was for an injunction practically the same as in the original petition, hereinbefore set out, except in this amended petition the court is asked to enter the additional restraining orders, as follows:

"(i) That the defendants W. M. Davis, T. F. Reiley, J. Y. Renfro, and T. A. Thompson be restrained from issuing any warrants or pay-ing or causing to be paid to W. J. Kelley any sum of money whatever out of the proceeds of the sale of said road bonds, by virtue or under the contract entered into with him as engineer for said road district.

"(j) That said W. M. Davis, T. F. Reiley, J. Y. Renfro, and T. A. Thompson be restrained from letting any character of contract for the expenditure of more than $500 for any character of services whatever, except in case of emergency, in said road district to be paid for out of the funds realized out of the sale of the bonds of said road district, unless they shall first advertise for bids as provided by law, and let the contract to the lowest and best bidder.

"(k) That the defendants last aforementioned be restrained from advertising for bids or considering any offers or bids to build roads in said road district until they shall have first prepared complete plans, profiles, cross sections, and details of the work to be done and performed.

"(l) That the defendants last aforementioned be restrained from accepting any bid or offer to purchase any of the series of bonds of said road district, numbered from 1 to 200, inclusive, unless such bid or offer be an unconditional offer of par and accrued interest, without any commissions, to be paid in cash into the county treasury to the credit of said road district No. 4.

"(m) That said defendants last aforementioned be restrained from offering said bonds for sale without having first duly advertised the same for sale for at least a reasonable time before the day of sale.

"(n) That, in the event the contract of sale for said bonds and the contract for building said roads be canceled and set aside, then that defendants last aforementioned be required to order an election for the purpose of submitting the question of the revocation and cancellation of all of said series of said bonds to the qualified property tax paying voters of said road district; and that they be restrained from offering such bonds for sale, or advertising for bids, to build road in said road district until after the returns of such elections have been canvassed and the result declared.

"(o) That upon final hearing the temporary injunction heretofore granted be made permanent, for costs of suit, and general relief."

The defendants denied generally all the allegations of the plaintiffs' petition except such as they by their answer specially admitted. They especially averred that the bonds in question had been duly authorized by a vote of the property tax payers of road district No. 4, at an election held for that purpose; that after such election the entire record concerning said bond issue was submitted to and approved by the Attorney General of Texas; that thereafter the commissioners' court did, in manner and form as required by law, advertise for bids for the construction of the road in question and for bids for the 175 bonds awarded to Cochran & Lilley upon their bid; that after mature consideration said court concluded that the bid made by Cochran & Lilley for the con-

struction of the road was the lowest and best bid submitted to said court for such construction, and that in the exercise of its best discretion and judgment it accepted such bid, and did in good faith enter into a contract with Cochran & Lilley for the construction of said road; that the bid of Cochran & Lilley for the 175 bonds was made after the court had advertised for bids for same; that the bid of Cochran & Lilley for said bonds was to pay the par value thereof in cash, and that such bid was the best and highest bid that the court was able to obtain for such bonds, and therefore the court agreed to sell such bonds to Cochran & Lilley upon the conditions proposed by them in their bid. They averred that only a short time prior to the sale of said bonds to Cochran & Lilley, to wit, on November 4, 1920, at an election held in and for road district No. 4, to determine whether said bonds should be canceled, a majority of the property tax payers of said district voted against such cancellation, and that thereafter these defendants, Davis, Reiley, J. Y. Renfro, and Thompson, as members of the commissioners' court of Trinity county did take all necessary steps looking to the perfecting and approval of the records relating to the issuance of said bonds, and that they made a contract for the printing of same; that they advertised for bids for the construction of said road; that they advertised for bids for the purchase of said bonds; that at the time the petition which was presented to the court on the 11th day of February, 1921, asking that the question of revocation of said bonds be submitted to a vote of the taxpayers of such district, was presented to the commissioners' court, the court had not found that the bonds could not be legally sold, but on the contrary they had at such time valid legal bids for the bonds, and that as a fact said bonds could be legally sold and for the reason stated such petition was refused. They averred that the contracts made by them with Hayne Nelms and J. A. Platt, L. G. Hamilton and W. J. Kelley were for the performance of services partly incident to the issuance of the road bonds in question and for the construction of said road, and were in every respect legally made, and that it has never been the purpose of the court to pay these parties nor any one of them for services not rendered with reference to said bond issue for said road district No. 4, out of the funds belonging to said district. They also say that the bonds sold to the bank and to Hamilton were properly advertised for sale before they accepted the bids of such parties therefor, and that such bids were the highest and best bids they could obtain for said bonds.

Plaintiff made general denial of each and every allegation of the defendants' answer.

The cause was submitted to the court without a jury and at the conclusion of the evidence judgment was reversed dissolving the temporary restraining order theretofore entered, adjudging that the defendants be restrained from paying or causing to be paid any sum of money to W. J. Kelley out of the proceeds of the sale of road bonds of road district No. 4, by virtue of the contract made by the commissioners' court with Kelley on or about February 11, 1921, and adjudging that the plaintiffs be denied all other relief prayed for, and that defendants recover from plaintiffs all costs incurred. From the judgment so rendered, the plaintiffs have appealed.

At the request of appellants the trial court prepared and filed his findings of fact and conclusions of law, as follows:

"Findings of Fact.

"(1) The commissioners' court of Trinity county took all proper and legal steps looking to the ordering and issuing of the series of 200 bonds by and for road district No. 4 of said county and being the bonds mentioned in the pleadings of the parties plaintiff and defendant, and said bonds are in all respects the valid obligations of said road district No. 4, subject only to the registration and final approval thereof by the Attorney General's department.

"(2) At an election held on the 24th day of November, A. D. 1920, pursuant to an order made by the commissioners' court of Trinity county, upon its own motion, the qualified tax-paying voters of said road district No. 4 by a majority vote refused to order the revocation and cancellation of said road bonds.

"(3) Thereafter the said commissioners' court decided to construct approximately 52 miles of sand clay roads, or cause the same to be done, in said road district out of the proceeds of the sale of said bonds, and the said commissioners' court did advertise for bids for the construction of such sand clay roads for the time and in the manner required by law—the advertisement requiring that the bids be submitted for the construction of said roads to said commissioners' court on or before the 5th day of February, A. D. 1921. On said 5th day of February, A. D. 1921, said commissioners' court had and held a special meeting of said court at the courthouse in Groveton, Tex., for the purpose of opening and considering bids which might be made for the construction of said roads, and also for the purpose of considering offers for the purchase of bonds Nos. 11 to 185, inclusive, of the series of road bonds of said district. At said special term of the commissioners' court competitive bids were filed, and upon partial consideration thereof, on said 5th day of February, 1921, said court decided to take recess, and did recess said meeting until the 11th day of February, 1921, for the purpose of further considering the said competitive bids for the construction of said roads, and for the sale of said bonds. Pursuant to the recess the said commissioners' court duly and lawfully convened at its regular meeting place in the courthouse in the town of Groveton on the 11th day of February, 1921,

and, after further consideration of said competitive bids, decided that the bid of the defendants Jeff Cochran and H. S. Lilley for the construction of said roads and for the purchase of said bonds was the best bid submitted; that is to say, that the bid of said Cochran and Lilley for the construction of said roads was the lowest and best bid therefor, and that their bid for the purchase of said bonds was as good as any other bid therefor, and was at a price for which said bonds might be legally sold.

"(4) There was no fraud in the action of the commissioners' court in finding that the bid of Cochran & Lilley for the construction of said work or in finding that their bid for the purchase of said bonds was the best made.

"(5) In presenting their bid for the construction of said roads the said Cochran & Lilley did not intend thereby to absorb and take care of any losses which they might sustain on account of the fact that the market value of said bonds was below par; that the said bid was made by the said Cochran & Lilley on the basis of the fair and reasonable cash value of the work by them proposed to be done in the construction of said roads, and said bid was considered and acted upon by the commissioners' court on the same basis as if the said work was to be paid for in cash without any reference to purchase of bonds by the said Cochran & Lilley. The bid of the said Cochran & Lilley for the construction of said roads was, in fact, the lowest and best bid made therefor, and was a reasonable bid for the doing of said work when considered on the basis of the payment in cash therefor, and without any reference to the purchase by them of said bonds or or of any of them. Said bid was not for a larger amount than is currently paid for work of like character when payments are made in cash, and when there is cash in the treasury at the time of the letting of the contract for such work.

"(6) The roads contemplated to be built in said road district No. 4 and covered by the contract which was by the said commissioners' court made with the defendants Cochran & Lilley were the character of roads permitted by law to be constructed out of the proceeds of the sale of said road bonds.

"(7) The various orders and proceedings constituting what may be termed a bond record for the said issue of bonds were and are regular and valid, and such as will command the approval thereof by the Attorney General's department upon presentation thereof, together with the printed bonds, to said Attorney General's department. The plaintiffs failed to show that the said bond record has not been presented to and approved by the Attorney General's department; but the court finds, as aforesaid, that said record will command the approval of the Attorney General, and that the bonds have already been printed and the names of the officers lithographed upon the coupons attached thereto as required by law, and each and all of said bonds have been signed by the officers of Trinity county as required by law, and the commissioners' court of Trinity county did, on the 23d day of February, 1921, order and direct the county judge of said Trinity county, upon completion of the signing of said bonds by the county judge, the county clerk, and the county treasurer, and the registration thereof by the county treasurer, to forward the same to the Attorney General's department for examination, along with the bond record, which had already been submitted to the Attorney General's department, and for approval by said Attorney General's department, and for registration in the office of the comptroller. Signing and registration of said bonds by the proper officers of Trinity county was completed on February 24, 1921, but the said county judge, though instructed to do so, failed and refused to forward said bonds to the Attorney General's department for approval and registration, but has kept the said bonds somewhere in the town of Groveton until the trial of this cause.

"(8) The commissioners' court of Trinity county advertised for bids on the said road bonds, and advertised for the sale thereof, and made repeated efforts to sell the same, and found sale of one of said bonds, being No. 1, to the First National Bank of Groveton, at par and accrued interest, to be paid in cash upon delivery thereof, and found sale of another of said bonds, bond No. 2, to L. G. Hamilton, at par and accrued interest, to be paid upon delivery of said bond to L. G. Hamilton, and the bids of the said First National Bank and L. G. Hamilton for the said respective bonds were the highest and best bids that could be obtained therefor, and said commissioners' court entered into contracts with the said bank and the said Hamilton for the sale to them, respectively, of said bonds 1 and 2; and the court finds that the said contracts of sale were in conformity with the law.

"(9) After the making of the contract by the commissioners' court with Cochran & Lilley for the construction of the roads and for the sale of the bonds, as aforesaid, a question was raised as to that part of the contract covering the sale of the bonds which permitted payment therefor in installments secured by surety bond, and thereafter, on the 23d day of February, 1921, said commissioners' court was duly and lawfully convened in special session at its regular meeting place in the courthouse at Groveton for the purpose of permitting the said Cochran & Lilley to amend their offer for the purchase of said bonds so that said offer should propose the payment in cash at the entire purchase price thereof at their par value upon the delivery of the bonds. The said Cochran & Lilley made such amended offer to said commissioners' court at said special session, which amended offer was accepted by the court, and the original contract was so amended by the action of the commissioners' court and Cochran & Lilley as to provide for the sale of said bonds numbered from 11 to 185, inclusive, by said commissioners' court to said Cochran & Lilley at their par value, payable in cash upon the delivery of said bonds.

"(10) The plaintiffs failed to show that the warrant issued to Hayne Nelms and J. A. Platt was illegal, or was for services which the said commissioners' court, as such, could not lawfully employ the said Nelms and Platt to perform at the expense of said road district. On the contrary, the court finds that the said warrant was issued to Nelms and Platt to cover and pay an account rendered by them for legal services performed at different times and covering various items.

"(11) The commissioners' court of Trinity

county employed L. G. Hamilton to have printed and lithographed the bonds of three road districts of Trinity county, and among them the bonds of road district No. 4, and to cause to be submitted the bond record covering the issuance of said bonds to some reputable attorney whose opinion upon their validity would be accepted by bond buyers, and to secure the opinion of such attorney, if the facts warranted, and for the aggregate of services—that is to say for the printing and lithographing of said bonds, the submitting of the record, and securing of the opinion of the attorney as to the validity of the bonds for said three districts—the said commissioners' court agreed to pay the said Hamilton $880; but it was not shown that any particular service to be done by the said Hamilton under his said employment for road district No. 4 contemplated the payment of as much as $500 therefor, and the court therefore finds that the commissioners' court was not required to advertise before making the contract with said Hamilton. This court further finds that the contract with the said Hamilton and the services to be performed by him thereunder were a part of the necessary expenses incident to the issuance of said road bonds.

"(12) The contract with W. J. Kelley, which is mentioned and described in plaintiff's first amended original petition, contemplates the expenditures of more than $2,000 and was not advertised for prior to the making thereof as required by law.

"Conclusions of Law.

"Upon the foregoing findings of fact the court concludes as a matter of law:

"(1) That the defendants, the county commissioners of Trinity county, should be restrained from going on with the performance of the contract made by said commissioners with W. J. Kelley.

"(2) That except as against the said W. J. Kelley the plaintiffs are entitled to no relief, and that the temporary restraining order heretofore issued should be dissolved, and judgment entered that the plaintiffs take nothing by this action except an injunction against the performance of the said contract with W. J. Kelley, and that the defendants recover of plaintiffs all costs."

Upon motion being made by appellants for additional findings of fact, the court filed the following findings:

That the bid made by Cochran & Lilley for the bonds 11 to 185, inclusive, was conditioned upon their bid for the construction of the road being accepted; but that such condition constituted no fraud on the part of the commissioners' court or of Cochran & Lilley, and that it worked no harm, injury, hurt, or damage to said district No. 4; that no plans, prints, profiles, specifications or details, other than the advertisement for building sand clay roads, were prepared at the time bids were advertised for or at the time bids were opened, and none was presented to any person bidding or desiring to bid for the road construction, save and except the proposal to

236 S.W.—14

build sand clay roads; that there was no evidence showing or tending to show that L. G. Hamilton failed to do and perform the services which he contracted to perform; that there was presented to the commissioners' court of Trinity county, on February 11, 1921, a petition signed by a number of citizens, and that of this number 201 were shown to be property tax paying voters resident in said road district No. 4 of Trinity county, Tex., and that there were at the time 257 resident tax paying voters residing in said district; that said petition was for the purpose of having an election ordered by said court in said road district to determine whether said bonds should be canceled or revoked, and that demand was made upon the court to order said election; but that the court could not legally order said election because it had before it at the time bids for the sale of said bonds, and that the said bonds were in fact sold by said court.

In view of the foregoing long and full statement of the case, we feel that we would not be justified in extending this opinion to unusual length by discussing in detail each of the 41 assignments presented in appellants' brief. We shall therefore undertake to dispose of the appeal by a discussion of the material issues which are controlling in the disposition of the cause.

The effect of the contention made by the first, second, third, and fourth assignments is that the trial court erred in not rendering judgment restraining the county commissioners from delivering the 175 bonds to Cochran & Lilley upon their bid for same; restraining Cochran & Lilley from receiving same; restraining all of said parties from doing any, act in consummation and in furtherance of the sale of such bonds; and restraining the county commissioners from delivering to the First National Bank and to L. G. Hamilton bonds Nos. 1 and 2, respectively, sold to them upon their bids.

In support of the contention made by such assignments, appellants have submitted the following propositions:

"(1) The bonds must have been forwarded to the Attorney General with a copy of the bond record, for approval by him and for registration by the comptroller before they could legally be offered for sale or be sold.

"(2) Before the bonds could be legally sold, they must have been advertised for a reasonable time that they would be sold on a particular date, and they must then be sold to the highest and best bidder.

"(3) The bonds cannot be legally purchased upon condition that the purchaser be also given a contract to build roads to be constructed with the proceeds thus realized.

"(4) A sale of bonds upon condition that the purchaser will be awarded a contract to construct roads at a price sufficiently above what the work could be done for if paid for in cash, to enable the purchaser to recoup his loss by

reason of the market value of the bonds being below par, is void."

[1] The first of these propositions is submitted under the construction placed upon article 619 of our Civil Statutes by counsel for appellants, it being provided by such article that, before bonds such as the ones in question are offered for sale, "a certified copy of the order, or ordinance, levying the tax to pay interest and provide a sinking fund, with a statement of the total bonded indebtedness of such county" proposing to issue same, "including the series of bonds proposed, and the assessed value of property for purposes of taxation, as shown by the last official assessment, of said county, * * * together with such other information as the Attorney General may require," shall be forwarded to the Attorney General; whereupon it shall be the duty of the Attorney General to carefully examine said bonds in connection with the facts and the Constitution and laws on the subject of the execution of such bonds, and if, as the result of such examination the Attorney General shall find that such bonds were issued in conformity with the Constitution and laws, and that they are valid and binding obligations upon such county, city or town, by which they are executed, he shall so officially certify."

We are unable to agree with the appellants in their contention. We think the provisions of article 619, above referred to, to the effect that bonds and the supporting record shall be submitted to and examined and approved by the Attorney General before such bonds are offered for sale, is directory only, and that a departure from such statutory provisions as to the time or mode of doing a thing required or permitted by law will not usually invalidate proceedings thereunder.

A statute is generally directory only when it contains mere matters of direction, and is not followed by words of positive prohibition. City of Uvalde v. Burney, 145 S. W. 311; Gomez v. Timon, 60 Tex. Civ. App. 311, 128 S. W. 656; Davis v. State, 75 Tex. 420, 12 S. W. 962; French v. Edwards, 13 Wall. 506, 20 L. Ed. 702; 28 Cyc. p. 1608.

While it is not shown that the bonds and the supporting records required by law had been submitted to the Attorney General for his examination and approval, it is agreed by the parties to this suit that the necessary petition for election, order for election, notice of election, the election and order canvassing and declaring the returns of the election as favorable to the issuance of the bonds in question, were had so as to make said bonds valid.

In the case of City of Uvalde v. Burney, supra, it is said:

"It is the rule that a departure from statutory provisions as to the time or mode of doing a thing required or permitted by law will not usually invalidate the proceedings thereunder.
* * *

"Again, it is stated by a text-writer, and supported by authority, that, 'where the provision is in affirmative words, and it relates to the time or manner of doing the acts which constitute the chief purpose of the law, or those incidental or subsidiary thereto, by an official person, the provision has been usually treated as directory.' The same writer says: 'Where a statute is affirmative, it does not necessarily imply that the mode or time mentioned in it are exclusive, and that the act provided for, if done at a different time, or in a different manner, will not have effect.' Suth. Stat. Const. § 447. The same author cites a number of authorities to sustain the proposition that provisions regulating the duties of public officers and specifying the time for their performance are, in that regard, generally directory. Section 448."

Again:

"Provisions of this character are not usually regarded as mandatory, unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated."

In Davis v. State, 75 Tex. 420, 12 S. W. 962, it is said:

"It may be said that the use of the word 'shall' shows that the provision is mandatory. That it is a command to the commissioners' court may be granted; but it does not follow that it is mandatory in the sense that it makes a compliance with the provisions essential to the legality of the election. The word 'shall' has been frequently construed as not mandatory, when the provision in which it was found did not confer a private right, and the public interest did not demand such construction."

In the case of North Bennington First National Bank v. Arlington, Fed. Cas. No. 4806, the United States Circuit Court of Vermont held that the statute which provides that municipal aid bonds shall be registered in the office of the town clerk, but contains no provision that the bonds shall be invalid unless so registered, and further provides that the bonds shall become valid obligations when so made and issued, is merely directory, and a failure to comply with such provision does not affect the validity of the bonds.

In 28 Cyc. at page 1608, the author says:

"If the statute merely provides that they (bonds) shall be registered, and does not provide that they shall not be valid until registered, the statute will be construed as directory, and a failure to register will not invalidate the bonds."

The question as to whether the requirements of article 619 of our Civil Statutes, to the effect that bonds issued under the provisions of such statute, together with the supporting record, shall be submitted to the At-

torney General for his examination and approval before being offered for sale, is mandatory or directory only, may be, we think, determined by the rule as established by the authorities above cited. It will be noted that the provisions of the statute mentioned relate merely to the time and manner of making the sale of the bonds and is only incidental or subsidiary to the sale of the bonds, and that there is no negative word or anything in the statute from which it could be necessarily implied that the mode or time mentioned in it are exclusive, and that the act provided for, if done at a different time or manner, would not have effect.

The contract for the sale of the bonds, sought to be enjoined, provided that the sale was to be consummated only upon the approval of the bonds by the Attorney General, and it follows that if, for any reason, the bonds or the records with reference to them were not approved by the Attorney General, the sale was not to be consummated, and therefore we conclude that the actual sale and delivery of the bonds was not contemplated until they and the record supporting their issuance were examined and approved by the Attorney General. Therefore, it seems to us that, if the Attorney General, after examination of the bonds and the record authorizing their issuance, approves the same, and holds that they are valid, and Cochran & Lilley are ready to execute their contract by paying to the county, for the benefit of road district No. 4, in cash, the par value of the bonds, together with the accrued interest thereon, it being shown by the undisputed evidence that the sum bid for the bonds was much above their market value, and at a sum authorized by law, such proposed sale must be upheld as a substantial compliance with the law.

[2] We are also of the opinion that the fact that the bid of Cochran & Lilley for the purchase of the bonds is contingent upon the award to them of the contract to construct the proposed road is no legal obstacle to the consummation of the sale of the bonds to them, it being shown that their bid was a sum above the market value of the bonds, and that their bid for the construction of the road was the lowest and best bid obtainable, and not above the sums usually prevailing for such work.

It cannot be held upon the evidence adduced in the instant case that the trial judge erred in dissolving the temporary injunction. In Ogg v. Dies, 176 S. W. 638, a case very much like the present case, the court said:

"The law does not prohibit a county from selling bonds to contractors for public works for the construction of which the bonds are issued. The statute forbids the sale of bonds of this character for less than par value and accrued interest."

In this case there was ample evidence to support the conclusion of the trial judge that no evasion of the law will result if the Cochran & Lilley contracts for the purchase of the bonds and for the construction of the road, here sought to be enjoined, are carried out. We think there was ample evidence to support the court in finding that the bid for the work was made upon a cash basis, and that such work could not be procured for a less amount.

We also think that it was shown, as found by the trial court, that the proposed sale of the bonds was duly advertised for a reasonable time before such sale was made.

[3] We overrule the fifth assignment. We think the published notice that the commissioners' court would receive bids for the construction of approximately 50 miles of sand clay road was sufficient to enable prospective bidders to submit bids for such construction, it being shown that such bids were to be made upon the basis of the removal of dirt, gravel, etc., by the cubic yard, and of grubbing the roadway for so much per acre, and of digging ditches, etc., and not for the construction of a completed road. There is no law requiring the adoption of complete plans and specifications by the commissioners' court before advertising for bids for the construction of roads.

We also overrule the contention that the bid of Cochran & Lilley for the roadwork is void for uncertainty.

[4] We have also reached the conclusion that the finding of the trial court that there was no fraud in the action of the commissioners' court in finding that the bids of Cochran & Lilley for the construction of the roadwork and for the bonds were the best bids obtainable by them is amply sustained by the evidence. And we also find that the acceptance of such bids by said court was after deliberate consideration of all the bids for such work and bonds then before said court.

The determination of the commissioners' court, after due consideration of all the bids before it, that the bids of Cochran & Lilley were the best bids obtainable, will not be set aside in an action to enjoin the execution of the contract made in pursuance of such bids, in the absence of clear evidence that such bids were not the best bids obtainable, and that the court fraudulently awarded the contracts on such bids. We find that there was no such evidence in the case.

[5] By the sixth and seventh assignments it is insisted that the court erred in refusing to restrain the officers sued from paying L. G. Hamilton and Nelms & Platt any sum or sums for legal services rendered in connection with the issuance and approval of said road bonds.

The contention of appellants under these assignments are, first, that the commission-

ers' court is without authority to employ attorneys to advise it in the preparation of road bonds and to render opinions as to the legality of such bonds; and, second, that services of any character for any sum to be performed by any one under a contract with a road district must be secured by advertising for bids, and, if not so let, is void.

It is further contended that, as by the provisions of article 356 it is made the duty of the district and county attorneys to give legal advice to the commissioners' court when request is made therefor, and as articles 605, 619, 622, and 632 make it the duty of the Attorney General to pass on all bond records, etc., the employment of L. G. Hamilton and Nelms & Platt was unlawful and void.

[6] We think these contentions may be answered by saying that neither L. G. Hamilton nor Nelms & Platt were parties to this suit, and therefore the court was without power to inquire into the validity of contracts entered into between them and the commissioners' court. In Bonner v. City of Texarkana, 227 S. W. 505, it is held that contractors with a city are indispensable parties to a suit by taxpayers to enjoin the city from making payment to such contractors, on the grounds of invalidity of the contract, as without their presence the court could not grant the relief prayed for so as to bind said contractors; so unless they are joined the court should not proceed otherwise than to dismiss the suit. Many authorities are cited to sustain this opinion. But we may add that we agree with appellees that the act of the Thirty-Fifth Legislature, as found in articles 2268a, 2268b, Revised Statutes, requiring advertisement by the commissioners' court before entering into certain contracts, has no application to the character of contracts of service contemplated in and covered by the contracts between Hamilton and the commissioners' court, and that of Nelms & Platt with said court.

[7, 8] We are also of the opinion that article 356 was intended to impose a duty upon the county and district attorneys, and not as a restriction upon the commissioners' court in the employment of attorneys to advise and render services to the court in important matters coming before it for its consideration. It is clear, we think, that the services to be performed by Hamilton or Nelms & Platt were not such as are required of the Attorney General.

[9] By the ninth assignment it is insisted that the court erred in not enjoining the county commissioners from constructing roads of soil, soil and sand clay, or any class of road other than macadamized or paved roads and turnpikes, such as are authorized by article 3, § 52, of the Constitution, and by article 619 of the Civil Statutes, to be paid for from the funds realized from the sale of the bonds. We think roads covered with sand clay or any character of material so as to make a firm, hard smooth surface over which horses, carriages, automobiles, and other vehicles may pass are classed as "paved roads" as that term is used in the Constitution and statutes. Coleman-F. Pasture Co. v. Aransas County, 180 S. W. 316; Id. (Sup.) 191 S. W. 556. We therefore overrule the ninth assignment.

[10] We do not think, under the facts shown, that the court erred in refusing to order the county commissioners to order an election for the purpose of submitting the question of revocation and cancellation of the bonds to the qualified voters of said road district. The trial court found, upon ample evidence, that at the time the petition asking for the election mentioned in the foregoing assignment was presented to the commissioners' court said court had before it substantial bids for the bonds; that said bonds could be legally sold, and were in fact sold. This being true, the commissioners' court was not required to order an election under the provisions of article 637h of our Revised Statutes, as contended by appellants.

[11] By their Thirty-Fifth assignment appellants insist that, as they recovered judgment against the defendants in the trial court restraining them from carrying out the Kelley contract, they were entitled to a judgment for the costs incurred in that court, unless for good cause stated in the record the costs were adjudged against them.

We do not think this assignment presents reversible error. Appellants did not prevail in their main or essential contentions. The only judgment recovered by them was against the county commissioners, restraining them from carrying out the Kelley contract. Kelley was not a party to this suit, and the prayer for an injunction restraining appellees from carrying out their part of the contract with Kelley was presented for the first time in appellants' amended petition, which was filed on the day of the trial. We would not reverse the judgment upon the error assigned.

We have examined the numerous assignments attacking the findings of fact and conclusions of law of the court, and, after careful consideration, we conclude that there was ample evidence to support all the material findings of the court, as well as his conclusions of law.

We have also examined and considered all other assignments not hereinbefore discussed, and have concluded that none of them presents reversible error.

Having reached the conclusions as above expressed, the judgment is affirmed.

Affirmed.